IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MERCION CLIFFTON FREEMAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:20-cv-01211-P-BP |
| § | |
| AMERICAN CREDIT ACCEPTANCE, § | |
| LLC, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendant's Motion to Compel Arbitration and Dismiss Proceedings (ECF No. 7) and Brief in Support (ECF No. 8), both filed on November 12, 2020, and Plaintiff's Response to Defendant's Motion to Compel Arbitration and Motion to Stay (ECF No. 16), filed on December 11, 2020. This case was referred to the undersigned automatically pursuant to Special Order No. 3 on November 5, 2020. ECF No. 3. After considering the pleadings, briefs, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Mark T. Pittman **GRANT** Defendant's Motion to Compel Arbitration and Dismiss Proceedings (ECF No. 7) and **DISMISS** Plaintiff's claims **WITH PREJUDICE**.

**I.      BACKGROUND**

This case began on September 10, 2020 when Mercion Cliffton Freeman ("Freeman") filed his original petition in the Justice Court of Tarrant County, Texas, Case No. JP01-20-SC00014563. ECF No. 1 at 1. Freeman sued American Credit Acceptance, LLC ("ACA") for allegedly violating the Fair Credit Reporting Act ("FCRA"), defaming him, and causing willful injury. ECF No. 1-2 at 2. Specially, Freeman alleged that ACA "refused to correct information after being provided

proof of inaccuracy" on his credit report. ECF No. 1-3 at 3. ACA timely removed the case on November 5, 2020. ECF No. 1.

The facts underlying the case are as follows. On June 20, 2016, Freeman entered a written Retail Installment Sales Contract ("Contract") to buy a used 2006 Lexus GS300 from an AutoNation dealership in Frisco, Texas. ECF No. 9 at 8-9. ACA provided the financing in the principle amount of $14,235.03. *Id.* The Contract included an arbitration clause. *Id.* After ACA financed Freeman's purchase of the car, the dealership sold, transferred, and assigned all of its rights, title, and interests in the Contract to ACA, as provided in the Contract. *Id.* at 5.

Freeman alleges that ACA reported inaccurate and erroneous information on his credit profile provided to credit bureaus and violated the FCRA by failing to respond to a letter requesting a "Validation of Debt" sent on July 8, 2019. ECF No. 16 at 4. Specifically, Freeman contends that ACA violated 15 U.S.C. § 1681 by failing to respond to his letter within thirty days, reported fraudulent information to the credit bureaus, defamed his character, and denied him due process. *Id.* He claims that ACA's actions lowered his credit score "injuring [his] [c]redit [w]orthiness, relationships, friendships, career opportunity advancement, and inter alia." *Id.* at 5.

Freeman claims to have received a letter from ACA on August 21, 2019, in which it allegedly admitted that it had reported inaccurate information. *Id.* Freeman states that ACA then continued to report inaccurate information even after it sent its "letter of proof." *Id.* In response to the allegedly false information that was reported, Freeman filed a complaint with the Consumer Financial Protection Bureau ("CFPB") on September 14, 2019. *Id.* Freeman alleges that on November 13, 2019, ACA responded, "openly admitting there was deceptive and fraudulent practices on the Contract." *Id.* He contends further that ACA's response admitting fraud voids the entire Contract, including the arbitration agreement. *Id.* Freeman argues that the Contract, and

2

therefore the arbitration clause, is voided due to "[f]raudulent ([f]orgery) activities" he discovered on August 21, 2019. ECF No. 16 at 4. He claims that ACA confirmed the forgery in a letter he received from it as well as in its response to the complaint that he filed with the CFPB. *Id.*

ACA contends that federal law requires Freeman to arbitrate his claims in accordance with the arbitration clause contained in the Contract. ECF No. 8 at 2. In support of its Motion to Compel Arbitration, ACA submitted copies of the Contract signed by Freeman, which contains an arbitration clause. *See* ECF No. 9. Pursuant to the arbitration provision, Freeman agreed that either party may choose to have any dispute decided by binding arbitration and not by a court action. ECF No. 9 at 11. The arbitration clause also provides that any arbitration "shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. Seq.) and not by any state law concerning arbitration" and contains a venue provision that requires claims to be arbitrated in New York, New York. *Id.* The arbitration clause specifically invokes the Federal Arbitration Act ("FAA"), and Freeman does not dispute this fact. The Court therefore determines that the FAA applies to any arbitration of Freeman's claims against ACA arising from the Contract.

## II.   LEGAL STANDARDS

In the FAA, Congress expressed "a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown,* 304 F.3d 469, 471 (5th Cir. 2002). When considering a motion to compel arbitration, the court must first determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (citation omitted). The FAA embodies "a liberal federal policy favoring arbitration agreements," and courts should

resolve any ambiguity in favor of arbitration. *Gilmer v. Interstate/Johnson Lan Corp.*, 500 U.S. 20, 25 (1991); *see FedMet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999).

**III.   ANALYSIS**

   *A.   The Contract contains a valid agreement to arbitrate.*

Freeman does not dispute that the Contract contains a valid agreement to arbitrate, but instead argues that ACA forged his signature on the Contract, which invalidates the Contract and its arbitration clause. *See* ECF No. 16 at 8-9. In support of his allegations of forgery, Freeman provides the complaint he filed with the CFPB as well as ACA's response, in which he claims ACA admits to forging his signature. ECF No. 16 at 8-19. Additionally, Freeman attaches a copy of the Contract that purportedly contains his forged signature with handwritten notes in the margin, stating each of the signatures have been forged. ECF No. 16 at 25.

Despite Freeman's claims to the contrary, ACA "strenuously denie[d]" any forgery in its response to Freeman's CFPB complaint. *Id.* at 11; ECF No. 18 at 2. ACA further asserts it could not have forged Freeman's signature because it received the Contract from the dealer already signed by Freeman. *Id.* Additionally, ACA argues that Freeman has produced no evidence of his own to support his allegations that his signature was forged and therefore he has failed to produce "some evidence" supporting his claim of forgery as required by the Fifth Circuit. *Id.*

To allege a forged signature on an agreement to arbitrate, the party disavowing the signature "bears the initial burden of production" to create a fact issue on the validity of the agreement. *Prevost v. Burns Int'l Sec. Servs. Corp.*, 126 F. Supp. 2d 439, 442 (S.D. Tex. 2000). The Fifth Circuit has held that a party to an arbitration agreement cannot simply declare the agreement invalid and demand a jury trial, but instead "must produce at least some evidence to substantiate his factual allegations." *See Dillard v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*,

961 F.2d 1148, 1154 (5th Cir. 1992) (citing *T & R Enters., Inc. v. Cont'l Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980)). And to raise a genuine fact issue, the resisting party cannot simply make an "unequivocal denial that the agreement had been made," but must also produce some evidence to substantiate his denial. *See T & R Enters., Inc.*, 613 F.2d at 1278 (citations omitted).

Freeman has not made a sufficient showing that his signature was forged to create a fact issue on the Motion. *See Banuelos v. Alorica, Inc.*, No. EP-20-cv-65-DB, 2020 WL 4060781 (W.D. Tex. July 20, 2020). In *Banuelos*, the Court held that a mere allegation of forgery, even if supported by an affidavit, is insufficient on its own to create a fact issue and invalidate the arbitration agreement. *Id.* at *3. Instead, there must be at least "some evidence" to corroborate the allegation. *Id.* Here, Freeman has not supported his allegation of forgery with any probative evidence. He does not even attempt to support his forgery claim forgery by offering evidence that his signature is arguably distinct from the signature on the Contract. *See Prevost*, 126 F. Supp. at 441-42 (proponent of forgery claim can meet burden of raising a fact issue through evidence that signature on arbitration agreement is arguably distinct from signature on another document.). Instead Freeman relies on a copy of the Contract that contains his own handwritten notes stating that his signature has been forged, as well as his claim that ACA admitted to forging his signature to the Contract in response to his complaint filed with the CFPB, despite ACA's response to his complaint to the CFPB clearly stating that it "strenuously denies" any forgery. ECF No. 16 at 8, 11, 25.

Freeman has not only provided insufficient evidence of his signature being forged, but as ACA has established and the record reflects, his performance under the Contract has served to ratify it. *Zieben v. Platt,* 786 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1990, no writ). As ACA has shown, Freeman made twenty-two payments under the terms of the Contract, almost

all of them being in the exact amount listed in the Contract. ECF No. 18 at 4. Freeman's actions establish that he not only knew about the Contract and intended to honor it, but that he substantially performed the Contract by making payments on the car loan. Therefore, since Freeman accepted the benefits of the Contract and treated it as valid for approximately two years as evidenced by his payments from August 2016 through August 2018, he ratified the Contract and is therefore bound by its terms. *See Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 325 (5th Cir. 2006) ("a contract is ratified when a party recognizes its validity by acting under it or by affirmatively acknowledging it."); *see* ECF No. 19 at 6. Because Freeman has not raised an evidentiary issue on whether the Contract was invalid due to forgery, and the evidence presented by ACA overwhelmingly proves that Freeman performed under the Contract and ratified it by his conduct, the undersigned finds that the arbitration clause is a valid and enforceable agreement between the parties to the Contract.

      B.    *Freeman's claims are within the scope of the arbitration clause.*

Having found that a valid agreement to arbitrate exists, the Court must next determine whether the present dispute is within the scope of that agreement. *Tittle*, 463 F.3d at 418-19. "The duty to arbitrate remains one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit." *Id.*; *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614 (1985). "[In] the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986).

The arbitration clause here broadly provides that "any claim or dispute, whether in contract, tort, statute or otherwise … which arises out of or relates to [Freeman's] credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) . . . ." shall be

resolved by binding arbitration. ECF No. 9 at 11. Freeman alleges that ACA violated the FCRA by failing to respond to his letter regarding payments made in accordance with the Contract. Freeman's claims fall squarely within the arbitration clause as they arise out of the "contract or any resulting transaction or relationship" that he has with ACA. *Id.*; *see Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (affirming the district court's holding that the FCRA and other claims were within the scope of "[a]ll disputes" in the arbitration clause).

Therefore, Freeman's claims must be submitted to binding arbitration. On the issue of whether the case should be stayed or dismissed pending arbitration, while the FAA provides for a stay pending arbitration, when a court determines that all claims of a lawsuit are subject to arbitration, dismissal of claims referred to arbitration may be made with prejudice. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *see* 9 U.S.C. § 3. The reason for dismissal with prejudice is that retaining jurisdiction of the action by the district court serves no purpose because any remedies after arbitration are limited to judicial review as set forth in the FAA. *Id.* (citation omitted). Having determined that all of the issues raised by the parties are arbitrable under the Contract's arbitration clause and finding no other reason to retain jurisdiction over this matter, the undersigned recommends that Judge Pittman dismiss the suit with prejudice.

### IV.   CONCLUSION

Because the dispute at issue falls within the scope of an arbitration clause, and Freeman has not offered sufficient probative evidence to support his claim that his signature to the contract between the parties that contains the arbitration clause was forged, the undersigned

7

**RECOMMENDS** that Judge Pittman **GRANT** the Defendant's Motion to Compel Arbitration and Dismiss Proceedings (ECF No. 7) and **DISMISS** Plaintiff's claims **WITH PREJUDICE**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** December 31, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE